[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16417
Non-Argument Calendar

_____

D. C. Docket No. 06-00289-CR-J-33-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASMINE ALLEN,
RODNEY LEON SMITH,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(November 20, 2009)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Rodney Leon Smith appeals from his convictions and sentences for a
number of drug-related offenses, and his co-defendant, Jasmine Allen, appeals

from her sentence for similar offenses. On appeal, Smith argues that the district court: (1) erred by denying his suppression motion because the police did not have probable cause to search his car for cocaine base; (2) violated the Confrontation Clause by limiting his cross-examination of a government witness; (3) erred by not dismissing his indictment, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), when the government failed to properly turn over evidence concerning the unreliability of the confidential source ("CS"); (4) violated the Confrontation Clause by permitting a government agent to testify that the CS told him that he had previously purchased drugs from Smith; and (5) erred by finding that he was responsible for distributing 11.33 grams of cocaine base.[1] Allen argues on appeal only that her 235-month sentence is substantively unreasonable. After careful review, we affirm.

We review a district court's denial of a motion to suppress under a mixed standard of review. See United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007). The court's factual findings are reviewed for clear error, and its application of law to those factual findings is reviewed de novo. Id. "Further, when considering a ruling on a motion to suppress, all facts are construed in the light

---

[1] Smith also raises a number of new arguments for the first time in his reply brief, which we will not consider on appeal. See United States v. Martinez, 83 F.3d 371, 377 n.6 (11th Cir. 1996).

most favorable to the party prevailing in the district court." Id. at 1235-36. We review de novo an alleged violation of a Sixth Amendment right. United States v. Yates, 438 F.3d 1307, 1311 (11th Cir. 2006) (en banc). The key question, however, is whether the district court clearly abused its discretion by curtailing cross-examination, once there was sufficient cross-examination to satisfy the Confrontation Clause, and whether a reasonable jury would have received a significantly different impression of the witness's credibility had counsel pursued the proposed line of cross-examination. United States v. Maxwell, 579 F.3d 1282, 1296 (11th Cir. 2009). A district court's denial of a Brady objection is reviewed for abuse of discretion. United States v. Vallejo, 297 F.3d 1154, 1163 (11th Cir. 2002). We also review the denial of a mistrial motion for abuse of discretion. United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir.), cert. denied, 128 S. Ct. 218 (2007). We will only reverse the denial of a mistrial when "there is a reasonable probability that, but for the remarks [in question], the outcome of the trial would have been different." Id.

"This court reviews the district court's application and interpretation of the sentencing guidelines under the de novo standard of review, but reviews its findings of fact for clear error." United States v. Rhind, 289 F.3d 690, 693 (11th Cir. 2002). Under this deferential standard, a sentencing court's credibility

3

findings are "virtually never" reversible so long as the pertinent witness's testimony was internally consistent. See United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005) (quotations omitted). Finally, we review the ultimate sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).

First, we reject Smith's claim that the district court erred in denying his suppression motion. The Fourth Amendment prohibits law enforcement officers from searching a person's property unless: (1) they have a valid search warrant; or (2) an exception to the search warrant requirement applies. See United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006). One of the exceptions to the search warrant requirement is the automobile exception, which permits law enforcement officers to search a vehicle if: (1) the vehicle is operational; and (2) the law enforcement officers have probable cause to believe the vehicle contains evidence of a crime. Id. "Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." Id. at 1264 (quotations omitted).

As applied here, the district court did not err by denying Smith's motion to suppress drug evidence seized during a search of his car because police officers

4

had probable cause to believe that Smith's car contained cocaine base that Smith intended to sell to a CS. During the suppression hearing, a government agent testified that on August 2, 2006, the CS, in a telephone conversation, brokered a transaction with Smith in which Smith agreed to sell the CS cocaine base at the Hwy. 17/State Rd. 100 gas station. Thus, when Smith subsequently showed up at the Hwy. 17/State Rd. 100 gas station, the investigators could have reasonably believed that there was a fair probability that Smith's vehicle contained cocaine base that he intended to sell to the CS. This is especially true given that, prior to this date, Smith had twice sold cocaine base to the CS and law enforcement officers in controlled transactions.

Moreover, Smith's argument that the evidence should be suppressed because the CS was unreliable is meritless. First, the investigators did not learn about the CS's unreliability until pretrial preparations, which occurred well after the search of Smith's car. United States v. Brazel, 102 F.3d 1120, 1147 (11th Cir. 1997) (upholding a warrantless search of an automobile because there was sufficient evidence to find that "probable cause existed at the time of the search"). Second, the investigators recorded a phone conversation in which the CS and Smith set up the drug transaction that was supposed to occur later in the day. Thus, the investigators had independent means to corroborate the CS's information about

5

this planned drug transaction, and Smith's appearance further supported the CS's veracity as to this series of events. In short, because the investigators could reasonably believe that Smith was arriving at the Hwy. 17/State Rd. 100 gas station to sell the CS cocaine base, they had probable cause to search Smith's car, and the district court did not err by denying Smith's suppression motion.

Next, we find no merit in Smith's argument that the district court violated his Confrontation Clause rights by limiting his cross-examination of a government witness. In <u>Francis v. Dugger</u>, 908 F.2d 696 (11th Cir. 1990), we considered the applicability of the Confrontation Clause to cross-examination questions dealing with a pending criminal charge. The trial court in <u>Francis</u> did not permit the defendant in that case to ask one of the government witnesses about an unrelated murder charge that was pending against that witness. <u>Id.</u> at 699. On habeas review, we held that "[t]he main and essential purpose of confrontation is to <u>secure for the opponent the opportunity of cross-examination</u>." <u>Id.</u> at 701 (emphasis in the original; quotations omitted). We added that:

> The confrontation clause does not, however, prevent a trial court from imposing any limits on the cross-examination of a prosecution witness concerning that witness's potential bias. A trial court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

6

Id. at 702 (applying Del. v. Van Arsdall, 475 U.S. 673, 679 (1986) (direct criminal appeal)). We held that evidence of the pending murder charge was only "marginally relevant and, therefore, inadmissible." Francis, 908 F.2d at 702. We elaborated that the facts of the pending charge were not relevant to the facts of the case in which the witness was testifying, and there was no evidence (and no proffer) that the witness made a deal with the government with regard to her pending charge. Id.

In this case, the district court did not violate the Confrontation Clause by limiting Smith's cross-examination of the government witness who had an unrelated pending charge for attempted murder. As the record shows, there was a proffer that the witness was charged with the attempted murder of Allen's brother. However, there was no evidence that Smith was in any way involved with the events surrounding that alleged attempted murder, and as a result, the witness's attempted murder charge was, at best, only marginally relevant to show bias toward Smith through his alleged hatred of Smith's girlfriend's brother. Further, questioning the witness about this charge had a very high potential for undue prejudice because it was evidence of prior criminal conduct, even though the witness had not been convicted of this conduct. Because this line of questioning had minimal relevance to this case while having a very high potential for undue

prejudice, the district court did not abuse its considerable discretion by limiting Smith's cross-examination of that witness. See Maxwell, 579 F.3d at 1296; Francis, 908 F.2d at 702.[2]

We likewise are unpersuaded by Smith's claim that the district court erred by not dismissing his indictment pursuant to Brady v. Maryland. In Brady, the Supreme Court held that, under the Due Process Clause, the government may not suppress evidence favorable to an accused when that evidence "is material either to guilt or to punishment." 373 U.S. at 87.

> To establish a Brady violation, the defendant must show that (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

Vallejo, 297 F.3d at 1164.

Here, the district court did not abuse its discretion by determining that the government complied with Brady even though it failed to turn over evidence concerning the unreliability of the CS. As an initial matter, Smith's assertion that he did not know why the government considered the CS an unreliable witness

---

[2] As for Smith's suggestion that the district court improperly limited his cross-examination of other witnesses, we are unconvinced. On our review of the record, it does not appear that the district court limited Smith's cross-examination of these other witnesses.

misstates the record. During the Brady hearing, Smith told the court that he was informed by the government that it had decided not to use the CS as a witness because it had discovered that, during the course of the investigation, the CS was involved in illicit drug transactions with Smith. On this record, Smith's argument that the belated disclosure of this evidence constituted a Brady violation is therefore meritless because Smith's previously-unknown drug deals with the CS were not exculpatory, but rather, were actually inculpatory. See Vallejo, 297 F.3d at 1164. In addition, as the record shows, the government did not suppress this evidence, but turned the evidence over to Smith's attorney soon after it was discovered. As a result, the district court did not abuse its discretion by denying Smith's Brady motion.

We also reject Smith's claim that the district court violated the Confrontation Clause by permitting a government agent to testify that the CS told him that he had previously purchased drugs from Smith. As the record shows, there is no reasonable probability that the outcome of the trial would have been different if the government agent Smith never made his statement about the CS telling him that he had previously purchased drugs from Smith. During the course of the trial: (1) two government witnesses testified that they had regularly purchased cocaine base from Smith; (2) another witness testified that he had twice

purchased cocaine base from Smith; and (3) two investigators testified that Smith sold cocaine base in controlled drug transactions. Because this evidence was more than sufficient to convict Smith of the charged drug distribution offenses, the government agent's remark about the CS's prior dealings with Smith would not have affected the probable outcome of this trial, and the district court did not abuse its discretion by denying Smith's motion for a mistrial.

We are unpersuaded by Smith's final argument as well: that the district court erred by finding that he was responsible for distributing 11.33 grams of cocaine base. "When a defendant objects to a factual finding that is used in calculating his guideline sentence, . . . the government bears the burden of establishing the disputed fact by a preponderance of the evidence." Rodriguez, 398 F.3d at 1296 "The preponderance of evidence is a relaxed evidentiary standard, however, it does not grant the court a license to sentence a defendant in the absence of sufficient evidence when that defendant has properly objected to a factual conclusion." Id. (quotations omitted).

When a defendant is convicted of a drug crime, his base offense level is determined primarily using the drug quantity table in U.S.S.G. § 2D1.1(c). See U.S.S.G. § 2D1.1(a)(3). This drug quantity table provides different base offense levels for different amounts of drugs, and it assigns its maximum base offense

10

level of 38 to defendants who are involved with at least 4.5 kilograms of cocaine base. See id. § 2D1.1(c)(1).

The district court did not clearly err by holding Smith responsible for at least 4.5 kilograms of cocaine base because one of the government witnesses testified that, over a two-year period, he made weekly purchases of significant amounts of cocaine base from Smith. Indeed, this amount adds up to at least 5.8 kilograms of cocaine base over the lifetime of the conspiracy.[3] And, in addition to the 5.8 kilograms that Smith sold to that witness, there was evidence, from another witness's testimony, that Smith would give him gram quantities of cocaine base three times a week from 2004 until 2005.[4] Thus, the evidence that was presented to the district court easily established that Smith had distributed at least 4.5 kilograms of cocaine base, and we affirm Smith's convictions and sentences.

---

[3] Using a conservative estimate, that witness purchased two ounces of cocaine base per week from Smith over a two year period. Because there are 52 weeks in a year, that means that he purchased 104 ounces of cocaine base from Smith each year. This was done over a two year period, so the 104 yearly amount is multiplied by two to determined that the witness purchased 208 ounces of cocaine base from Smith. Because there are 28 grams in one ounce, 208 is multiplied by 28 to convert the amount into grams. This yields a total of 5824 grams. Then, because there are 1000 grams in a kilogram, this number is divided by 1000 to yield a total of approximately 5.8 kilograms of cocaine base.

[4] Moreover, Smith's argument that the testimony of these witnesses was unreliable because he was unable to fully cross-examine them is without merit because, the district court did not abuse its discretion by limiting Smith's cross-examination of the first witness, as discussed supra, and Smith's cross-examination of the other witness was never limited in any significant way.

Lastly, we disagree with the claim of Smith's co-defendant, Allen, that her 235-month sentence was substantively unreasonable. In reviewing sentences for reasonableness, we typically perform two steps. Pugh, 515 F.3d at 1190. First, we "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'" Id. (quoting Gall v. United States, 128 S.Ct. 586, 597 (2007)).[5] If we conclude that the district court did not procedurally err, we consider the "'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard,'" based on the "'totality of the circumstances.'" Id. (quoting Gall, 128 S. Ct. at 597). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute

---

[5] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotations and alterations omitted).

"[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006) (quotation omitted). Further, if a defendant fails to object to facts contained in the pre-sentence investigation report ("PSI"), she is deemed to have admitted those facts. United States v. Bennett, 472 F.3d 825, 833-34 (11th Cir. 2006).

Here, Allen raises only a substantive reasonableness challenge, but has failed to demonstrate that her within-guidelines sentence was substantively unreasonable in light of the § 3553(a) factors. To begin with, Allen did not object to most of the factual statements in the PSI, and, therefore, she is deemed to have admitted them. Id. These factual statements indicate that over a two-year period, Allen was responsible for distributing over 11 kilograms of cocaine base. Due to this extremely large quantity of drugs, the § 3553(a) factors of seriousness of the offense and deterrence strongly favor a longer sentence in this case. See 18 U.S.C. § 3553(a).

As for Allen's argument concerning her lack of criminal history, we are unpersuaded because this lack of criminal history was reflected in Allen's

guideline range through her criminal history category. Her remaining argument concerning her minimal involvement in the offense is likewise misplaced because the undisputed facts in the PSI indicate that: (1) both Allen and Smith were responsible for the large amount of drugs involved in this offense; and (2) in at least one instance, Allen personally sold drugs to a person that she believed was a drug buyer.

In short, because at least two § 3553(a) factors favored a longer sentence, the district court did not abuse its discretion by sentencing Allen to 235 months' imprisonment, which was at the bottom of her guideline range. Accordingly, we affirm her sentence.

**AFFIRMED.**