[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16243
_____

D.C. Docket No. 1:06-cv-20570-AJ

ASKARI ABDULLAH MUHAMMAD,
f.k.a. Thomas Knight,

Petitioner–Appellee
Cross Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents–Appellants
Cross Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 23, 2013)

Before MARCUS, WILSON, and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

To learn about the gridlock and inefficiency of death penalty litigation, look

no further than this appeal.  Askari Abdullah Muhammad kidnapped and murdered

Sydney and Lillian Gans four decades ago, in 1974.  A Florida jury convicted Muhammad of murder, a Florida judge sentenced him to death, and the Supreme Court of Florida affirmed his conviction and sentence on direct appeal.  While he awaited state collateral review, Muhammad killed again; this time, Muhammad murdered a prison guard because he was upset that he had been denied permission to meet with a visitor.  In 1988, after the Florida courts denied Muhammad postconviction relief, we granted Muhammad's petition for a writ of habeas corpus and vacated his death sentence because of impermissible comments by the trial judge and counsel for both parties.  A state trial judge resentenced Muhammad to death, and the Supreme Court of Florida again affirmed his conviction on direct appeal and collateral review, but in 2012 the district court granted Muhammad a federal writ of habeas corpus on the ground that his right to confrontation had been violated at his resentencing hearing.

Now, four decades after Muhammad killed Sydney and Lillian, we reverse the grant of the writ and deny Muhammad's petition.  Muhammad's claim that the admission of hearsay testimony at his resentencing hearing violated his rights under the Confrontation Clause, U.S. Const. Amend. VI, fails because hearsay is admissible at capital sentencing and Muhammad had an opportunity to rebut the hearsay.  Muhammad's claim that the application of the cold, calculated, and premeditated statutory aggravating factor violated his rights under the Ex Post

Facto Clause, id. Art. I, § 9, fails because the retrospective application of the factor did not disadvantage Muhammad.  We reverse the judgment in favor of Muhammad and render a judgment in favor of the Secretary.

## I.    BACKGROUND

On July 17, 1974, Muhammad (who then was named Thomas Knight) kidnapped and murdered Sydney and Lillian Gans near Miami, Florida.  When Sydney arrived at work that Wednesday morning and parked his Mercedes Benz car, Muhammad ambushed him and ordered him back into the car.  Muhammad commanded Sydney to drive home and pick up his wife, Lillian, and then to drive to a bank and retrieve $50,000 in cash.  Sydney went inside the bank to retrieve the money, but he also told the bank president that Muhammad was holding him and his wife hostage.  The bank president alerted the police and Federal Bureau of Investigation.

Muhammad then forced Sydney and Lillian to drive toward a secluded area on the outskirts of Miami.  Police officers in street clothes shadowed the Mercedes in unmarked cars.  A helicopter and a small fixed-wing surveillance airplane also eventually joined the surveillance.  The officers followed the vehicle, but they lost sight of the car for about four or five minutes.  During that time, Muhammad killed Sydney and Lillian with gunshots to the neck that he fired from the back seat of the car.  The police found the vehicle sitting in a construction area with the front

3

passenger door, the right rear passenger door, and the trunk open. Police saw Muhammad running away from the vehicle and toward a wooded area with an automatic rifle in his hands. Police found the dead body of Lillian behind the steering wheel and the dead body of Sydney about 25 feet from the vehicle. About four hours later, police apprehended Muhammad about 2,000 feet from the vehicle. Muhammad had blood stains on his pants; buried beneath him in the dirt were an automatic rifle and a paper bag containing $50,000.

In September 1974, Muhammad escaped from prison. After a massive nationwide manhunt, police finally captured Muhammad in December 1974. In 1975, a Florida jury convicted Muhammad of the murders of Sydney and Lillian, and the trial judge sentenced him to death. The Supreme Court of Florida affirmed his conviction and sentence on direct review. See Knight v. State, 338 So. 2d 201 (Fla. 1976).

In 1980, while Muhammad's petition for postconviction relief was pending before Florida state courts, Muhammad killed again. This time, he fatally stabbed a prison guard, Officer James Burke. Muhammad killed Burke because he was upset that he had been denied permission to meet with a visitor. Muhammad was convicted and sentenced to death for that murder too, and Muhammad currently awaits execution for the murder of Burke.

4

After his convictions for the murders of Sydney and Lillian became final, Muhammad embarked on an odyssey for postconviction relief that has spanned more than three decades. The Florida state courts denied Muhammad postconviction relief. See Knight v. State, 394 So. 2d 997 (Fla. 1981); Muhammad v. State, 426 So. 2d 533 (Fla. 1982). After a federal district court denied Muhammad's petition for a writ of habeas corpus, we vacated his death sentence, but not his conviction. Knight v. Dugger, 863 F.2d 705 (11th Cir. 1988). We held that comments of the trial judge, prosecutor, and defense counsel suggested that the jury was permitted to consider only statutory mitigating factors at the penalty phase, in violation of the Eighth and Fourteenth Amendments, U.S. Const. Amends. VIII, XIV, as interpreted by the Supreme Court of the United States in Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954 (1978). Knight, 863 F.2d at 709–10. We remanded the matter for the State to either resentence Muhammad or impose a lesser sentence than death. Id. at 710. Eight years later, in 1996, a Florida trial court resentenced Muhammad to death for the murders of Sydney and Lillian. This appeal concerns whether Muhammad's rights under the Confrontation Clause and the Ex Post Facto Clause were violated at that resentencing hearing.

At Muhammad's resentencing hearing, Detective Greg Smith testified on behalf of the State about some of the evidence presented at the guilt phase of Muhammad's trial. Smith had not testified at the trial in 1975, but he had been

5

assigned to the case after the lead investigator, Detective Julio Ojeda, retired from the police force.  Smith's testimony began on January 31, 1996.  When Smith first began to testify about the sworn testimony of one of Sydney's co-workers named Milton Marinek, Muhammad's lawyer objected that Smith's testimony would violate Muhammad's rights under the Confrontation Clause.  Muhammad's lawyer argued that Smith was "telling the jury what other people did, what other people said, . . . and the objection I raise is this violates the . . . confrontation rights of the defendant."  Muhammad requested a "continuing objection" to Smith's testimony.  The trial court overruled Muhammad's objection, but stated that it "will accept this objection as a continuing objection for all testimony from this witness referring to what other people told him or anything that is hearsay."  After Smith completed his summary of Marinek's trial testimony, the prosecutor asked Smith to discuss prior statements of Howard Perry, who witnessed Sydney and Muhammad arrive at the Gans home to pick up Lillian.  Muhammad's lawyer objected that the State did not present evidence that "Perry is dead or deceased and cannot be here to testify."  The district court overruled the objection and told Muhammad's lawyer, "You have made your confrontation rule argument.  I have accepted your objection, your object [sic] to all of it.  I don't want another sidebar on the subject of hearsay.  You have preserved your record."  Smith then testified about the prior statements of Perry.

6

Smith then testified about prior statements of Detective Ojeda, the lead investigator. Smith's summary was based on both the testimony of Ojeda during the guilt phase of Muhammad's trial and written reports that Ojeda prepared in the investigation. Muhammad did not object that the State failed to establish that Ojeda was unavailable to testify. After Smith testified at length about Ojeda's prior statements, Muhammad raised what he called a "due process" objection to Smith's testimony. Muhammad objected that, when Smith provided a summary of Ojeda's prior statements, Smith failed to distinguish between Ojeda's statements at trial and his statements in the written reports. The district court overruled that objection.

Smith's testimony established that Ojeda tracked Muhammad's vehicle based on information that the police dispatcher provided him. Ojeda then pursued the vehicle on foot and eventually discovered the vehicle and Lillian's dead body inside. Ojeda then saw, about 150 feet away, a black man running away from the vehicle. The man turned and pointed his gun in the direction of Ojeda, who took cover and lost sight of the suspect. When he took cover, Ojeda heard the surveillance helicopter overhead and motioned for the pilot to fly toward the person Ojeda saw running away from the vehicle. Ojeda later identified Muhammad as the man he saw running away from the vehicle.

7

At his resentencing hearing, Muhammad attempted to establish that the murders of Sydney and Lillian were not premeditated.  Muhammad argued that he never intended to kill Sydney and Lillian when he ordered them to drive to the outskirts of Miami.  Muhammad presented expert testimony that he suffered from schizophrenia and that he "snapped" and lost self-control when he discovered that the police and aircraft were following him.  Muhammad argued, based on this testimony, that the murders were not premeditated.  A critical issue at the sentencing hearing concerned when Muhammad became aware of the police surveillance.

To rebut Muhammad's suggestion that the murders were not premeditated, the State argued that Muhammad was unaware of the police surveillance at the time of the murders.  On February 7, 1996, as part of its rebuttal case, the State recalled Detective Smith to the witness stand.  Smith testified about a sworn statement that the helicopter pilot gave to police and the trial testimony and a sworn statement of the airplane pilot.  Muhammad's lawyers never objected that Smith's rebuttal testimony about the pilots violated the Confrontation Clause or that the State failed to establish that the airplane pilot was unavailable to testify at the resentencing hearing.

Smith's testimony established that neither the helicopter pilot nor the airplane pilot located Muhammad until after he had killed Sydney and Lillian.

8

According to Smith, the airplane pilot testified that he had first located the vehicle after it was stopped and Muhammad had already left the vehicle. And the helicopter pilot testified that he was not asked to join the search until about the time of the murders, but that police ordered him to land when they lost sight of the vehicle to ensure that the surveillance would not be compromised. The helicopter pilot did not return to the air until after the vehicle had been found and Muhammad was on foot. When Muhammad's lawyer asked Smith if he thought that Muhammad had heard the helicopter, Smith replied, "Absolutely not." The State argued, based on Smith's testimony and the evidence that only plainclothes officers and unmarked vehicles participated in the surveillance, that Muhammad did not become aware of police surveillance until after he committed the murders.

The jury recommended that Muhammad should be sentenced to death, and the trial court imposed a sentence of death. The trial court found that six statutory aggravating factors applied to the murders, including that Muhammad committed the murder in a cold, calculated, and premeditated manner. The five other statutory aggravating factors were that (1) Muhammad committed other violent felonies, including the contemporaneous murder of the other victim; (2) Muhammad committed the murders during the course of a kidnapping; (3) Muhammad murdered Sydney and Lillian to avoid arrest; (4) Muhammad acted for pecuniary gain; and (5) the murders were especially heinous, atrocious, and cruel.

9

The Supreme Court of Florida affirmed the sentence of death.  See Knight v. State,

746 So. 2d 423 (Fla. 1998).

Muhammad argued on direct appeal to the Supreme Court of Florida that

Smith's testimony about the prior statements of Ojeda, the helicopter pilot, and the

airplane pilot violated his rights under the Confrontation Clause.  Muhammad

argued that the statements of Ojeda and the pilots were inadmissible hearsay and

that the State never established that Ojeda and the airplane pilot were unavailable

to testify at the resentencing hearing.  The State responded both that Muhammad

waived those arguments and that the trial testimony was admissible.

The Supreme Court of Florida rejected Muhammad's claim on procedural

grounds.  The Supreme Court of Florida stated that, "because [Muhammad] never

specifically objected to Smith's testifying as to the contents of the pilot's

statement, we find this claim procedurally barred."  Id. at 430.  And the Supreme

Court of Florida stated that it "likewise reject[s] on procedural grounds

[Muhammad's] claim that statements by the [airplane] pilot and Detective Ojeda

should not have been admitted (through the testimony of Smith) absent a showing

that the pilot and the detective were unavailable" because "[Muhammad] did not

object to Smith's testimony as to statements made by either of these persons."  Id.

at 430 n.9.

Muhammad also argued that the application of the "cold, calculated, and premeditated" aggravating factor violated his rights under the Ex Post Facto Clause, but the Supreme Court of Florida rejected that argument too.  Id. at 434. The Supreme Court of Florida acknowledged that Muhammad committed the murders in 1974, five years before the legislature enacted the aggravator in 1979. Id.  But the Supreme Court of Florida explained that it had already held in Combs v. State, 403 So. 2d 418 (Fla. 1981), that the "application of the [cold, calculated, and premeditated] aggravator in this situation is not an ex post facto violation." Knight, 746 So. 2d at 434.  The Supreme Court of Florida later denied Muhammad postconviction relief.  Knight v. State, 923 So. 2d 387 (Fla. 2005).

On November 9, 2012, more than half a decade after the Supreme Court of Florida denied Muhammad postconviction relief, the district court granted Muhammad's petition for a federal writ of habeas corpus on the ground that Muhammad's right to confrontation had been violated at his resentencing hearing. The district court concluded that the procedural bar applied by the Supreme Court of Florida was "inadequate" because Muhammad's general standing objection to Smith's hearsay testimony preserved the more specific claims that he raised before the Supreme Court of Florida.  The district court applied de novo review, instead of the deferential standard of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), because the Supreme Court of Florida had not reached the merits

of Muhammad's claims under the Confrontation Clause.  The district court concluded that the right to confrontation applies at capital sentencing.  Although the district court acknowledged that the Supreme Court had held in Williams v. New York, 337 U.S. 241, 69 S. Ct. 1079 (1949), that unsworn and out-of-court statements are admissible at capital sentencing proceedings, the district court concluded that we had held in Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir. 1982), that Williams was abrogated and that the right to cross-examine adverse witnesses applies to capital sentencing.  The district court ruled that Muhammad's confrontation rights were violated because the State never established that the testimony of the helicopter pilot was reliable or that the helicopter pilot and Ojeda were unavailable to testify at the resentencing hearings.  And the district court ruled that the error was not harmless.  The district court granted Muhammad's petition for a writ of habeas corpus and instructed Florida to either resentence Muhammad or commute his sentence to life imprisonment.

The district court also concluded that the Supreme Court of Florida did not err when it decided that the application of the cold, calculated, and premeditated aggravator was not a violation of the Ex Post Facto Clause.  The district court reasoned that it was bound by our decision in Francis v. Dugger, 908 F.2d 696 (11th Cir. 1990), which held that a retrospective application of the factor did not violate the Ex Post Facto Clause.  Florida appealed the grant of Muhammad's

12

petition, and Muhammad cross-appealed the denial of relief on the ground that the application of the cold, calculated, and premeditated factor violated the Ex Post Facto Clause.

## II.    STANDARD OF REVIEW

We review <u>de novo</u> the grant or denial of a writ of habeas corpus by a district court.  <u>Fotopoulos v. Sec'y, Dep't of Corr.</u>, 516 F.3d 1229, 1232 (11th Cir. 2008); <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1058 (11th Cir. 2002).  If a state court adjudicates a federal claim on the merits and denies relief on that claim, we cannot grant a petition for a writ of habeas corpus based on that claim unless the adjudication of that claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d); <u>see</u> <u>Harrington v. Richter</u>, __ U.S. __, __, 131 S. Ct. 770, 785 (2011).  But if a state court "did not reach the merits of [the petitioner's] claim, federal habeas review is not subject to the deferential standard that applies under [section 2254(d)] to 'any claim that was adjudicated on the merits in State court proceedings.'  Instead, the claim is reviewed <u>de novo</u>."  <u>Cone v. Bell</u>, 556 U.S. 449, 472, 129 S. Ct. 1769, 1784 (2009) (citation omitted).

13

### III.    DISCUSSION

We divide our discussion in two parts.  First, we discuss why the admission of Smith's testimony did not violate Muhammad's rights under the Confrontation Clause.  Second, we discuss why the adjudication by the Supreme Court of Florida of Muhammad's claim about the cold, calculated, and premeditated aggravating factor did not result in a decision that was contrary to or based on an unreasonable application of clearly established law.

*A.    The Admission of Smith's Testimony Did Not Violate Muhammad's Rights Under the Confrontation Clause.*

We divide our discussion of Muhammad's claim under the Confrontation Clause in two parts.  First, we discuss why we do not decide whether the procedural bar of Florida was an adequate bar to relief.  Second, we discuss why Muhammad's rights under the Confrontation Clause were not violated because hearsay is admissible at capital sentencing and Muhammad had an opportunity to rebut the hearsay.

1.  We Need Not Decide Whether the Procedural Bar of Florida Was Adequate.

Before we address the merits of the claim under the Confrontation Clause, we first explain why we do not address the argument of the Secretary that Muhammad procedurally defaulted that claim.  The Supreme Court of Florida denied Muhammad's claim under the Confrontation Clause on the ground that Muhammad failed to make a contemporaneous and specific objection to Smith's

14

testimony about prior statements of Ojeda and the pilots.  When a state court dismisses a federal claim on a state procedural ground, we treat the claim as procedurally barred and dismiss it without reaching its merits, unless the procedural bar is not an "independent" and "adequate" bar to relief.  See Walker v. Martin, __ U.S. __, __, 131 S. Ct. 1120, 1127 (2011).

The Secretary argues that the district court erred when it concluded that the procedural bar applied by the Supreme Court of Florida was inadequate.  The district court held that Muhammad preserved his claim under the Confrontation Clause because he had a standing objection and "Florida law consistently recognizes that a standing objection preserves an issue for appeal."  The Secretary contends that the Supreme Court of Florida also has a firmly established and regularly followed rule that parties must make "contemporaneous" and "specific" objections to alleged errors at trial, see, e.g., Corona v. State, 64 So. 3d 1232, 1242 (Fla. 2011); Overton v. State, 976 So. 2d 536, 547 (Fla. 2007), and that Muhammad did not make a specific and contemporaneous objection to Smith's testimony about Ojeda and the pilots.  The Secretary argues that Muhammad's general objection, and the standing objection granted by the trial court, were insufficient to preserve the more specific objections he now raises on appeal.  The Secretary relies on the decision of the Supreme Court of Florida in Silvia v. State, 60 So. 3d 959 (Fla. 2011), where the defendant raised before the trial court a

15

"general objection" to the admission of victim impact evidence and the trial judge granted the defendant a "standing objection" on the issue, but the Florida Supreme Court held that this general objection was inadequate to preserve an objection to the admission of a particular victim impact letter. Id. at 977–78.

We need not decide this messy procedural issue. The Supreme Court has explained that "[t]he 'independent and adequate state ground' doctrine is not technically jurisdictional when a federal court considers a state prisoner's petition for habeas corpus pursuant to 28 U.S.C. § 2254," Lambrix v. Singletary, 520 U.S. 518, 522, 117 S. Ct. 1517, 1522 (1997), and that, although the procedural bar issue "ordinarily should be" decided first, it need not "invariably be resolved first," id. at 525, 117 S. Ct. at 1523. The Supreme Court has explained that, when it appears that another issue is more "easily resolvable against the habeas petitioner, whereas the procedural-bar issue involve[s] complicated issues of state law," a federal court may avoid the procedural bar issue. Id. Because the procedural bar involves a complicated issue of state law and this petition is more easily resolvable against Muhammad on the merits, we assume without deciding that the procedural bar is inadequate.

### 2. The Resentencing Hearing Did Not Violate Muhammad's Rights Under the Confrontation Clause.

Muhammad argues that his rights under the Confrontation Clause were violated at his sentencing hearing because he did not have an opportunity to cross-

16

examine Ojeda or the pilots and because the State did not establish that Ojeda and the airplane pilot were unavailable. The Secretary and Muhammad agree that the Supreme Court of Florida dismissed the claim under the Confrontation Clause on a procedural ground. "Because the [Florida] courts did not reach the merits of [Muhammad's Confrontation Clause] claim, . . . the claim is reviewed de novo." Cone, 556 U.S. at 472, 129 S. Ct. at 1784.

The Supreme Court of the United States has held that hearsay testimony is admissible at capital sentencing hearings. Williams, 337 U.S. at 252, 69 S. Ct. at 1085. In Williams, a state judge sentenced the defendant to death based in part on information contained in a presentence investigation report that was presented to the judge outside the courtroom. Id. at 244, 69 S. Ct. at 1081. The judge described the contents of the report to the parties and neither party challenged the accuracy of the report, but the defendant did not have an opportunity to cross-examine either the author of the report or the persons who spoke about the defendant in the report. Id. at 244, 69 S. Ct. at 1081–82. The defendant challenged his death sentence as violative of due process because his "sentence of death was based upon information supplied by witnesses with whom the accused had not been confronted and as to whom he had no opportunity for cross-examination or rebuttal." Id. at 243, 69 S. Ct. at 1081 (quotation marks omitted). But the Supreme Court held that the Due Process Clause, U.S. Const. Amend XIV, § 1, does not provide defendants

17

a right to confront the witnesses against them at sentencing. Id. at 251–52, 69 S. Ct. at 1085. And the Supreme Court expressly declined to "draw a constitutional distinction as to the procedure for obtaining information where the death sentence is imposed." Id. at 251, 69 S. Ct. at 1085.

Although hearsay is admissible at capital sentencing proceedings, the Supreme Court has held that a court may not impose the death penalty "on the basis of confidential information which is not disclosed to the defendant or his counsel." Gardner v. Florida, 430 U.S. 349, 358, 97 S. Ct. 1197, 1205 (1977) (plurality opinion). The defendant in Gardner was sentenced to death based in part on information contained in a presentence investigation report that was held in confidence by the judge and not disclosed to the defendant. Id. at 353, 97 S. Ct. at 1202. In four separate opinions, the Supreme Court held that the defendant had a constitutional right to the disclosure of the information in the report. See id. at 362, 97 S. Ct. at 1207 (finding a due process violation); id. at 364, 97 S. Ct. at 1208 (White, J., concurring in the judgment) (finding an Eighth Amendment violation); id. (Blackmun, J., concurring in the judgment) (same); id. (Brennan, J.) (finding a due process violation). The Supreme Court has since adopted Justice White's concurrence as the rule of Gardner and explained that the holding of Gardner is that "'[a] procedure for selecting people for the death penalty which permits consideration of . . . secret information relevant to the character and record

18

of the individual offender' violates the Eighth Amendment's requirement of 'reliability in the determination that death is the appropriate punishment.'" O'Dell v. Netherland, 521 U.S. 151, 162, 117 S. Ct. 1969, 1976 (1997) (quoting Gardner, 430 U.S. at 364, 97 S. Ct. at 1207–08 (White, J., concurring in the judgment)) (emphasis deleted).  Justice White explained in Gardner that the procedure in that case was inadequate because the defendant "had no opportunity to respond" to the confidential information admitted against him.  Gardner, 430 U.S. at 364, 97 S. Ct. at 1207 (White, J., concurring in the judgment).  The plurality similarly concluded that there was a violation of due process because the defendant was sentenced to death at least in part "on the basis of information which he had no opportunity to deny or explain."  Id. at 362, 97 S. Ct. at 1207 (plurality).

Williams and Gardner together stand for the proposition that a defendant does not have a right to confront hearsay declarants at a capital sentencing hearing, but that he does have a right to rebut information relevant to his character and record that is admitted against him at the sentencing hearing.  Both Williams and Gardner are still good law.  Although the law of capital sentencing has changed in some respects since Williams, "the Supreme Court of the United States has never questioned the precise holding of Williams v. New York."  Szabo v. Walls, 313 F.3d 392, 398 (7th Cir. 2003).  And the Supreme Court has repeated time and again that only it has the authority to overrule its prior decisions.  See, e.g., Tenet v. Doe,

19

544 U.S. 1, 10–11, 125 S. Ct. 1230, 1237 (2005) (explaining that if "precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions" (quoting Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22 (1989))); United States v. Hatter, 532 U.S. 557, 567, 121 S. Ct. 1782, 1790 (2001) (explaining that "it is this Court's prerogative alone to overrule one of its precedents" (quoting State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S. Ct. 275, 284 (1997))); Hohn v. United States, 524 U.S. 236, 252–53, 118 S. Ct. 1969, 1978 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); see also Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1263 (11th Cir. 2012) (explaining that we must heed Judge Hand's admonition to resist the "exhilarating opportunity of anticipating" the overruling of a decision of the Supreme Court (quoting Spector Motor Serv. v. Walsh, 139 F.2d 809, 823 (2d Cir. 1943) (Hand, J., dissenting))).  Our conclusion that Williams is still good law and that hearsay is admissible at capital sentencing is also consistent with the decisions of our sister circuits.  See United States v. Fields, 483 F.3d 313, 326 (5th Cir. 2007) (concluding, after a comprehensive review of the law, that "the Confrontation Clause does not operate to bar the

20

admission of [hearsay] testimony relevant only to a capital sentencing authority's selection decision"); Szabo, 313 F.3d at 398 (explaining that "the Supreme Court has held that the Confrontation Clause does not apply to capital sentencing," and that the right to confrontation "applies through the finding of guilt, but not to sentencing, even when that sentence is the death penalty"); see also United States v. Barrett, 496 F.3d 1079, 1100 (10th Cir. 2007) (explaining that "[i]t is far from clear that the Confrontation Clause applies to a capital sentencing proceeding" (quoting United States v. Higgs, 353 F.3d 281, 324 (4th Cir. 2003))); Higgs, 353 F.3d at 324 (same).

Muhammad argues that, notwithstanding the decision of the Supreme Court in Williams, we held in Proffitt, 685 F.2d 1227, that the Confrontation Clause bars the admission of all hearsay at capital sentencing, but this argument fails because it confuses the holding of Proffitt with its dicta. In Proffitt, we recognized only a limited right to cross-examine the author of psychiatric reports admitted at capital sentencing hearings. In that case, a state court judge sentenced the defendant to death based in part on a psychiatric report, but the author of the report did not testify at the capital sentencing hearing. Id. at 1250. We vacated the death sentence on the ground that the defendant had a constitutional right to cross-examine the author of the report. Id. at 1255. We acknowledged that the Supreme Court had held in Williams that the right to confrontation and cross-examination

21

does not apply at capital sentencing, but we explained that "[t]he constitutional requirements governing capital sentencing . . . have undergone substantial evolution in the wake of Furman v. Georgia, [408 U.S. 238, 92 S. Ct. 2726 (1972)]." Proffitt, 685 F.2d at 1252. We recognized as follows that, since Williams, the Supreme Court has made clear that death is different:

> The Supreme Court . . . has imposed procedural, as well as substantive, limitations on capital sentence decisionmaking. The view, once prevalent, that the procedural requirements applicable to capital sentencing are no more rigorous than those governing noncapital sentencing decisions, see, e.g., Williams, 337 U.S. at 251–52, 69 S. Ct. at 1085, is no longer valid.

Proffitt, 685 F.2d at 1253 (citation omitted). We looked for guidance to the decision of the Supreme Court in Gardner, which we understood to be "premised on the principle that death sentences may not constitutionally be imposed on the basis of information that the capital defendant has been afforded no opportunity to rebut." Id. at 1253–54. We explained that cross-examination is necessary to test the accuracy of expert opinion testimony, id. at 1254, and we concluded that "the right to cross-examine adverse witnesses applies to capital sentencing proceedings, at least where necessary to ensure the reliability of the witnesses' testimony," id. at 1255.

Eight months after we issued our first opinion in Proffitt, but before we issued the mandate in that appeal, we expressly limited our holding to cases involving the admission of psychiatric reports. See Proffitt v. Wainwright, 706

22

F.2d 311, 312 (11th Cir. 1983). We modified our opinion in Proffitt to add a footnote that our "decision that the right to cross-examination of adverse witnesses is extended to capital sentencing proceedings is necessarily limited to the facts of the case before us, involving psychiatric reports." Id. We made clear what was implicit before: our decision could not establish a categorical bar of hearsay at capital sentencing, but held only that the district court had erred by admitting psychiatric reports.

Muhammad argues that some of our decisions have understood Proffitt to bar the admission of hearsay at capital sentencing hearings, but to the extent these decisions suggest as much, they do so only in dicta. In some cases, we suggested that the Confrontation Clause applies at capital sentencing, but we then denied relief on the ground that any right under the Confrontation Clause was not violated. See  Hodges v. Att'y Gen., State of Fla., 506 F.3d 1337, 1344 (11th Cir. 2007); Duren v. Hopper, 161 F.3d 655, 666 (11th Cir. 1998). In another case, we concluded that the defendant had a right to confrontation at his capital sentencing hearing, but we rejected his argument because any error was harmless. See Mason v. Allen, 605 F.3d 1114, 1124 (11th Cir. 2010). "[T]he holding of a case is, as the Supreme Court observed, comprised both of the result of the case and 'those portions of the opinion necessary to that result by which we are bound.'" United States v. Kaley, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (quoting Seminole

23

Tribe of Fla. v. Florida, 517 U.S. 44, 67, 116 S. Ct. 1114, 1129 (1996)).  All that was "necessary to the result" in Hodges, Duren, and Mason was that any right to confrontation was not violated or that any violation was harmless.  Because "[t]he holdings of a prior decision can reach only as far as the facts and circumstances frame the precise issue presented in that case," Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006), any extraneous language in those cases about whether a right to confrontation bars the admission of hearsay in a capital sentencing hearing was dicta.  Other decisions cited by Muhammad do not even involve collateral attacks to state capital sentencing hearings, so those decisions could not have held that a right to confrontation bars the admission of hearsay in a state capital sentencing.  See United States v. Brown, 441 F.3d 1330, 1361 n.12 (11th Cir. 2006) (avoiding the question whether the right to confrontation exists at federal capital sentencing because there was no violation of the right); United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir. 2005) (holding that there is no right to confrontation at non-capital sentencing); see also Moore v. Zant, 885 F.2d 1497, 1511–12 (11th Cir. 1989) (en banc) (holding that a district court did not abuse its discretion when it concluded that the state prisoner's failure to include a claim based on Proffitt in his first federal petition constituted an abuse of the writ).

We cleared up any confusion in our case law in <u>Chandler v. Moore</u>, 240 F.3d 907, 918 (11th Cir. 2001), when we confirmed that hearsay is admissible at capital sentencing and that a defendant's rights under the Confrontation Clause are not violated if the defendant has an opportunity to rebut the hearsay. In <u>Chandler</u>, a police officer summarized at the capital sentencing hearing the testimony of several witnesses at the guilt phase trial. <u>Id.</u> The defendant argued that the admission of this hearsay evidence violated his rights under the Confrontation Clause, but we rejected that argument. <u>Id.</u> We first explained that, although "[t]he Sixth Amendment guarantees a defendant an adequate opportunity to cross-examine adverse witnesses," the defendant had an opportunity to cross-examine the witnesses at the original trial. <u>Id.</u> "Moreover," we added, "there is no Confrontation Clause violation because we agree with the Seventh Circuit that hearsay evidence is admissible at a capital sentencing. <u>Del Vecchio v. Ill. Dep't of Corr.</u>, 31 F.3d 1363, 1387–88 (7th Cir. 1994). This proposition does contain one caveat: that the state statute protect a defendant's rights by giving him/her the opportunity to rebut any hearsay information." <u>Chandler</u>, 240 F.3d at 918. We explained that the hearsay evidence against Chandler was admitted under a Florida law that provides that hearsay evidence may be admissible at a capital sentencing, "regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements." <u>Id.</u>

(quoting Fla. Stat. § 921.141(1)).  Because the defendant had an opportunity "to rebut the hearsay," we denied his claim under the Confrontation Clause.  Id.  Our citation of Del Vecchio establishes that we viewed Williams to still be good law because Del Vecchio expressly relied on Williams for the proposition that hearsay is admissible at capital sentencing.  See Del Vecchio, 31 F.3d at 1387–88.

Muhammad's rights under the Confrontation Clause were not violated because Muhammad had an opportunity to rebut the hearsay information.  The hearsay was admissible at Muhammad's capital sentencing hearings.  Williams, 337 U.S. at 252, 69 S. Ct. at 1085; Chandler, 240 F.3d at 918.  And Muhammad had an "opportunity to respond" to the hearsay.  See Gardner, 430 U.S. at 364, 97 S. Ct. at 1207 (White, J., concurring in the judgment); see also id. at 362, 97 S. Ct. at 1207 (plurality); Chandler, 240 F.3d at 918.  The hearsay testimony was not given in secret, but instead was presented by Smith in open court.  Compare Gardner, 430 U.S. at 353, 97 S. Ct. at 1202 (plurality).  Muhammad cross-examined Smith at the sentencing hearing, and he had the opportunity to present his own witnesses too.  Muhammad also had the opportunity to cross-examine both Ojeda and the airplane pilot at the guilt phase of his trial.

Although Muhammad did not have a prior opportunity to cross-examine the helicopter pilot, he had "the opportunity to rebut any hearsay information."  See Chandler, 240 F.3d at 918.  The Supreme Court "has never said that the right to

26

'deny or explain' sentencing information includes the confrontation rights that Williams rejected." Fields, 483 F.3d at 329 (quotation marks omitted). And we explained in Hodges that the right to rebut hearsay at capital sentencing does not include the right to cross-examine the hearsay declarant. Hodges, 506 F.3d at 1344. In that case, we held that a defendant had a "fair opportunity to rebut any hearsay statements" at his capital sentencing even though the defendant did not have an opportunity to cross-examine the hearsay declarant herself. Id. (quotation marks omitted). Muhammad does not argue that he was denied access to the prior statements of the helicopter pilot, that he could not cross-examine Smith, or that he could not call his own witnesses. Because Muhammad had an opportunity to rebut the hearsay, his claim under the Confrontation Clause fails.

*B. The Application of the Cold, Calculated, and Premeditated Aggravator Did Not Violate the Ex Post Facto Clause.*

Muhammad argues that the application of the "cold, calculated, and premeditated" statutory aggravating factor to his case violates the Ex Post Facto Clause, U.S. Const. Art. I, § 9, because that factor was not enacted until after he committed the murders, but that argument fails. Because the Florida Supreme Court adjudicated this claim on the merits, we may not grant Muhammad's petition for a writ of habeas corpus with respect to this claim "unless the state court's decision 'was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'

27

[28 U.S.C.] § 2254(d)(1)." Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013) (en banc) (quoting Johnson v. Upton, 615 F.3d 1318, 1329 (11th Cir. 2010)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, __ U.S. at __, 131 S. Ct. at 786 (quotation marks omitted). Muhammad must establish that the decision of the Supreme Court of Florida "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786–87.

The Supreme Court of Florida dismissed Muhammad's claim on the ground that it had already concluded, in Combs, 403 So. 2d 418, "that application of the [cold, calculated, and premeditated] aggravator in this situation is not an ex post facto violation." Knight, 746 So. 2d at 434. The defendant in Combs, like Muhammad, was convicted of first-degree murder and sentenced to death. Combs, 403 So. 2d at 419. The sentencing judge in Combs found that one aggravating factor for the murder was that the defendant had committed the murder in a cold, calculated, and premeditated manner. Id. at 421. The Supreme Court of Florida explained that the application of the factor did not violate the Ex Post Facto Clause because, although the factor was enacted after the defendant committed the murder, the factor did not disadvantage the defendant. Id. The court stated that the

28

factor "reiterates in part what is already present in the elements of premeditated murder" and that the trial judge is already permitted to consider the elements of the offense at sentencing.  Id.  The court stated that application of the factor actually benefits the defendant because the factor limits the ways in which the trial judge may consider the elements of the charged offense.  Id.  The court explained that, with the addition of the new factor, the "premeditation" element of the offense can only be considered if "the premeditation [was] 'cold, calculated and . . . without any pretense of moral or legal justification.'"  Id.  The court concluded that application of the new aggravating factor did not violate the Ex Post Facto Clause because the new factor "adds nothing new to the elements of the crimes for which petitioner stands convicted but rather adds limitations to those elements for use in aggravation, limitations which inure to the benefit of a defendant."  Id.

The decision of the Supreme Court of Florida in this appeal was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  See Richter, __ U.S. at __, 131 S. Ct. at 786–87.  A law violates the Ex Post Facto Clause if it (1) "appl[ies] to events occurring before its enactment" and (2) "disadvantage[s] the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime."  Lynce v. Mathis, 519 U.S. 433, 441, 117 S. Ct. 891, 896 (1997) (quotation marks and citation omitted).  Muhammad, like

the defendant in <u>Combs</u>, was convicted of first-degree murder, so the sentencing judge was permitted to consider the statutory element that Muhammad acted in a premeditated fashion. As in <u>Combs</u>, any application of the statutory aggravating factor did not "disadvantage [Muhammad] by . . . altering the definition of criminal conduct or increasing the punishment for the crime." <u>Id.</u> (quotation marks omitted). And we cannot say that the decision of the Supreme Court of Florida in <u>Combs</u> was unreasonable because Muhammad has not identified any decision of the Supreme Court that conflicts with <u>Combs</u>.

Moreover, in <u>Francis</u>, 908 F.2d at 705, we rejected a claim almost identical to the one Muhammad now raises on appeal. In that appeal, a defendant convicted of first-degree murder and sentenced to death in Florida argued that the application of the cold, calculated, and premeditated factor to his case violated the Ex Post Facto Clause, but we rejected that argument. <u>Id.</u> at 704–05. We explained that the facts on which the trial judge relied to apply the factor "were the same facts underlying application of other aggravating factors, such as 'hindering law enforcement' and 'especially atrocious and cruel.'" <u>Id.</u> at 705 (quotation marks omitted). We explained that, because the Florida sentencing scheme does not require judges to merely tabulate the aggravating and mitigating factors, but instead to weigh the underlying facts, the application of the factor did not disadvantage the defendant because it was redundant with other factors that the

30

trial judge found weigh against the defendant.  Id.  In this matter, as in Francis, the trial judge found that both the cold, calculated, premeditated aggravator, and the atrocious and cruel aggravator, applied to Muhammad's case.  Based on our decision in Francis, we cannot say that the decision of the Supreme Court of Florida was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court.

## IV.    CONCLUSION

We **REVERSE** the judgment in favor of Muhammad and **RENDER** a judgment in favor of the Secretary.

WILSON, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's opinion insofar as it holds that the application of the "cold, calculated, and premeditated" statutory aggravating factor in this case does not violate the *ex post facto* clause of the United States Constitution. U.S. Const. art. I, § 9. Relying upon clear precedent, the Florida Supreme Court determined that, although this aggravating factor was enacted after Muhammad committed the Gans murders, its application did not add anything new to the elements of the crimes for which he was convicted and did not disadvantage him. *Knight v. State*, 746 So. 2d 423, 434 (Fla. 1998) (holding that the application of the "cold, calculated, and premeditated" factor is not an *ex post facto* violation where defendant was already convicted of premeditated first degree murder); *see Combs v. State*, 403 So. 2d 418, 421 (Fla. 1981) (holding that the application of this aggravating factor did not violate the *ex post facto* clause because it "reiterates in part what is already present in the elements of premeditated murder").

Indeed, the Florida Supreme Court's decision in this case was neither contrary to nor an unreasonable application of clearly established Federal law. *See* 28 U.S.C. § 2254(d)(1); *Evans v. Sec'y, Dept. of Corr.*, 703 F.3d 1316, 1325 (11th Cir. 2013) (en banc). A law violates the *ex post facto* clause if it applies to events occurring prior to its enactment and disadvantages the offender by altering the definition of criminal conduct or increasing the punishment for the crime. *Lynce v.*

32

*Mathis*, 519 U.S. 433, 441 (1997); *see Carmell v. Texas*, 529 U.S. 513, 568 (2000). Specifically, this court previously rejected the claim that this aggravating factor violates the *ex post facto* clause where the facts that the trial judge relied upon in applying the factor were the same as those underlying other aggravating factors and thus did not disadvantage the defendant. *Francis v. Dugger*, 908 F.2d 696, 705 (11th Cir. 1990) (holding that no *ex post facto* violation occurred because the application of the aggravating factor "cold, calculated, and premeditated" did not disadvantage the defendant). Where, as here, the application of the "cold, calculating, and premeditated" factor did not disadvantage Muhammad, I agree that the state's decision is not contrary to or an unreasonable application of Federal law as established by the Supreme Court.

Nevertheless, I have reservations about the majority's finding that it need not determine whether Florida's procedural bar was adequate, and its conclusion that Muhammad's 1996 resentencing hearing did not violate his rights under the Confrontation Clause of the Sixth Amendment.

### A. *Florida's procedural bar on Muhammad's Confrontation Clause claim was inadequate*

First, with regard to Florida's procedural bar, I respectfully disagree that it is too complex an issue to decide. A federal court reviewing petitions for habeas corpus will not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question

33

and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Conner v. Hall*, 645 F.3d 1277, 1287 (11th Cir. 2011); *Smith v. Dep't of Corr.*, 572 F.3d 1327, 1336-37 (11th Cir. 2009). In order to qualify as an "adequate" procedural ground, the state rule must be "firmly established and regularly followed." *Walker v. Martin*, _ U.S. _, 131 S. Ct. 1120, 1127 (2011). Also, in order to be "adequate," the rule cannot have been applied by the state court in an inconsistent or manifestly unfair manner. *See Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995); *Hansbrough v. Latta*, 11 F.3d 143, 145 (11th Cir.), *cert. denied*, *Alabama v. Hansbrough*, 513 U.S. 914, 115 S. Ct. 291 (1994).

In this case, the district court correctly found that the Florida Supreme Court's decision to bar Muhammad's Confrontation Clause argument did not rest on a "firmly established and regularly followed" Florida procedural rule, as required. *Muhammad v. Tucker*, 905 F. Supp. 2d 1281, 1293 (S. D. Fla. 2012) (citing *Conner*, 645 F.3d at 1288). It is evident that, at his resentencing hearing, Muhammad's counsel specifically made a standing objection to the hearsay testimony proffered by Detective Smith grounded in the Confrontation Clause of the Sixth Amendment.[1]    Indeed, throughout Detective Smith's testimony,

---

[1] Prior to Detective Smith's testimony, Muhammad's counsel stated: "My basic objection as to what the State intends to use this witness for which is to come in here and give some kind of summary of everything that happened which involves the witness based on his investigation, telling the jury what other people did, what other people said, either over the radio or in person, and the objection I raise is this violates the rights of—the confrontation rights of the defendant on the Sixth Amendment and Article 1616, whatever it is, of the Florida Constitution. I would

Muhammad's counsel continued to object, provoking the judge's explicit acknowledgement that the testimony was hearsay and that Muhammad raised a Confrontation Clause argument.[2]  Nevertheless, the Florida Supreme Court barred this claim, finding that there had been no objection to testimony about out of court statements made by the airplane pilot or Detective Ojeda.  *Knight v. State*, 746 So, 2d 423, 429-30 (Fla. 1998).   Given Florida courts routinely accept standing objections when the court is put on notice of the basis for the objection, this procedural bar is inadequate.  *Corona v. State*, 64 So. 3d 1232, 1242 (Fla. 2011) (holding that a standing objection which informs the court of the perceived error is sufficient to preserve a Confrontation Clause argument on appeal); *Floyd v. State*, 850 So. 2d 383, 393 n.20 (Fla. 2002) (recognizing petitioner's continuing objection before the trial judge); *Hopkins v. State*, 632 So. 2d 1372, 1376 (Fla. 1994) (finding that the standing objection was preserved where the trial court was put on notice of the potential error by the pretrial hearing and defense counsel's request for a continuing objection).

Further, the cases cited by the Secretary for the proposition that Muhammad's objections were insufficient are distinguishable.  For example, in

---

like to have a standing objection." *Muhammad v. Tucker*, 905 F. Supp. 2d 1281, 1293 (S. D. Fla. 2012) (citing Transcript of Trial, App. FF, at 2352–53.)

[2] "I don't want to hear the same objection and be brought sidebar for the same objection. This is hearsay. It is hearsay. You made your confrontation rule argument. I have accepted your objection, your [sic] object to all of it." *Id.* at 1294; *see* Principal and Response Brief of Appellee/Cross-Appellant, p. 23.

*Ferguson v. Secretary for the Department of Corrections*, this court noted that the trial record showed defense counsel requested an evidentiary hearing to permit the introduction of further mitigating evidence as opposed to making a due process objection.  580 F.3d 1183, 1213 (11th Cir. 2009).  In fact, Ferguson's counsel failed to object when the judge specifically asked whether there was any legal reason why it should not resentence him.  *Id.*  This court clarified that under the contemporaneous objection rule, "an issue is properly preserved if the trial court knows that an objection was made, clearly understands the nature of the objection, and denies that request."  *Id.* at 1212.  In *Corona v. State*, 64 So. 3d 1232, 1242 (Fla. 2011), the Florida Supreme Court concluded that the trial court was aware of the nature of the defendant's objections regarding his daughter's hearsay testimony, largely because it overruled similar objections in a pretrial conference. Thus, the *Corona* court concluded that because the defendant fairly apprised the court of the basis of his objections and the relief sought, he preserved his Confrontation Clause argument on appeal.  *Id.* at 1243.  Finally, the Secretary's reliance on *Silvia v. State*, 60 So. 3d 959 (Fla. 2011), is unpersuasive.  In *Silvia*, the defendant made a general objection to victim impact evidence and not to any particular statement in the letters that were read during the penalty phase of trial. *Id.* at 977–78.  The Florida Supreme Court clarified that because defense counsel had not specifically objected or articulated the basis for any objections, the

36

defendant must establish on appeal that a fundamental error or a violation of due process occurred. *Id.* at 97. Here, unlike in *Silva*, Muhammad's counsel repeatedly objected to the introduction of testimony, both on the basis of hearsay and the Confrontation Clause. In fact, counsel's objections were so clear and specific that the trial judge asked counsel to stop making them. *See Tucker*, 905 F. Supp. 2d at 1294 (quoting the trial judge's warning that it did "n[o]t want to hear the same objection [that] ... [t]his is hearsay [or] your confrontation rule argument").

In addition to being unpersuasive, the Secretary's argument that Muhammad's objections lacked the specificity to be preserved does not reflect the Florida Supreme Court's actual basis for finding the procedural bar. Instead of finding that Muhammad's objections were insufficiently specific, the court precluded Muhammad's Confrontation Clause argument on direct appeal because it found that he did not object to Smith's testimony as to statements made by Detective Ojeda or the pilot at all. *See Knight v. State*, 746 So. 2d 423, 430 n.9 (Fla. 1998).

In sum, Florida courts have routinely considered issues upon which parties made a standing objection to be preserved for appeal, *see, e.g. Floyd*, 850 So. 2d at 393 n.20, and the Secretary's arguments for why Muhammad's arguments should be procedurally barred are unavailing. Therefore, the district court correctly held that the Florida Supreme Court's procedural bar under these circumstances was

inadequate and appropriately considered Muhammad's Confrontation Clause argument.

## B. The resentencing hearing violated Muhammad's rights under the Confrontation Clause

While agreeing that the legal precedent on this issue is complicated, I ultimately agree with the district court that the Confrontation Clause of the Sixth Amendment applies in capital sentencing proceedings.

The Supreme Court has held that trial courts may consider hearsay testimony at capital sentencing hearings. *Williams v. New York*, 337 U.S. 241, 250-51 (1949) (holding that courts may consider presentence investigative reports, which were described to the parties but not subject to cross-examination without violating due process); *Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) (holding that courts may consider "unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics" at capital sentencing).    Subsequently, the Supreme Court clarified that a court may not impose the death penalty on the basis of confidential information which is not disclosed to the defendant. *Gardner v. Florida*, 430 U.S. 349, 358, 362 (1977).

However, the *Williams* decisions precede the application of the Sixth Amendment to state criminal prosecutions through the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403 (1965) (holding that the right of an accused to confront witnesses against him is a fundamental right).  Since then, the

Supreme Court has expanded the application of the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 825–26, 829 (2006) (refusing to limit Confrontation Clause protections to formal testimonial statements); *Crawford v. Washington*, 541 U.S. 36, 51–52 (2004) (barring out-of-court statements to police investigators absent witness unavailability and prior opportunity by the defendant to cross-examine). Moreover, this court has explicitly held that "the right to cross-examine adverse witnesses applies to capital sentencing hearings." *Proffitt v. Wainwright*, 685 F.2d 1227, 1254 (11th Cir. 1982). In *Proffitt*, we noted that "[b]ecause the death penalty … is permanent and irrevocable, the procedures by which the decision to impose a capital sentence is made bring into play constitutional limitations not present in other sentencing decisions." *Id.* at 1253. *Proffitt* specifically addressed the Supreme Court's trend towards imposing more procedural requirements in capital cases in order to reduce the risk of arbitrary decision making. *Id.* For example, we noted that the Supreme Court's more recent decision in *Gardner*, banning reliance on information not disclosed to the defendant or his attorney, was "premised on the principle that death sentences may not constitutionally be imposed on the basis of information that the capital defendant has been afforded no opportunity to rebut." *Id.* at 1253-54 (citing *Gardner*, 430 U.S. at 362). Based upon this analysis of Supreme Court precedent,

39

we concluded that "the right to cross-examine adverse witnesses applies to capital sentencing hearings." *Proffitt*, 685 F.2d at 1254.

The majority insists that this conclusion in *Proffitt* was merely dicta and that by limiting its holding, in a subsequent addendum to the opinion, to cases involving the admission of psychiatric reports, this court clarified that it did not create a categorical bar to hearsay at capital sentencing hearings.[3] *See Proffitt v. Wainwright*, 706 F.2d 311, 312 (11th Cir. 1983). At oral argument, Muhammad's counsel argued that the addendum to *Proffitt* could be read as simply saying that under these circumstances, where the sources and authors of a psychiatric report have not been cross-examined, use of the report in a sentencing violates the Sixth Amendment. The addendum's use of the phrase "necessarily limited to the facts of the case before us," *id.*, suggests that the court merely pointed out that the case did not present an opportunity for a broader expansion of Confrontation Clause rights.

Regardless of the addendum's significance at the time, this court has routinely cited *Proffitt* as authority for the proposition that the Confrontation Clause applies at a capital sentencing. Perhaps most significantly, in *Moore v. Zant*, 885 F.2d 1497, 1512 (11th Cir. 1989) (en banc), this court announced that "[i]n light of [the Supreme Court's trend toward expanding Sixth Amendment

---

[3] "Our decision that the right of cross-examination of adverse witnesses is extended to capital sentencing proceedings is necessarily limited to the facts of the case before us, involving psychiatric reports." *Proffitt v. Wainwright*, 706 F.2d 311, 312 (11th Cir. 1983).

protections], reasonably competent counsel reasonably could have anticipated the extension of . . . the right of confrontation[] to capital sentencing proceedings." *Id.* In other words, *Zant* held that the district court did not abuse its discretion in finding counsel's failure to raise Confrontation Clause objections to a presentence investigation report in a capital sentencing hearing inexcusable. Remarkably, we affirmed a district court finding that counsel's failure to raise the issue was inexcusable before *Proffitt* was even decided because reasonably competent counsel could have anticipated the extension of the Confrontation Clause to capital sentencing hearings. *Id.* at 1511–12. Now the majority asserts that such an extension was never made, despite *Proffitt*'s subsequent announcement.

More recently, this court has continued to cite *Proffitt* for its general proposition without limiting it to the narrow facts presented in that case. For example, in *United States v. Brown*, 441 F.3d 1330, 1361 n.12 (11th Cir. 2006) (per curiam), the court noted that "death is different," and cited *Proffitt* for the proposition that "the constitutional right to cross-examine witnesses applies to capital sentencing hearings." *Id.* In *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005), while refusing to extend *Crawford* to non-capital sentencing, this court again recognized that death is different, noting that "we have recognized a right to cross-examination in the context of *capital* sentencing." *Id.* (citing *Proffitt*, 685 F.2d at 1254–55); *see also United States v. Sanchez*, 278 F.

41

App'x 927, 929 n*, (11th Cir. 2008) (distinguishing the sentencing at issue from a capital sentencing proceeding by noting that "*Proffitt* recognized a right to cross-examination in the context of capital sentencing").  Whatever the significance of *Proffitt* at the time, our subsequent treatment of *Proffitt* renders its broader proposition—that the right to cross-examine witnesses applies to capital sentencing hearings—binding law in this Circuit.

To be clear, the Sixth Amendment right to confrontation is not as fulsome in a capital sentencing as during the guilt phase of a trial.  For example, in 2001, this court rejected a Confrontation Clause claim in *Chandler v. Moore*, 240 F.3d 907, 918 (11th Cir. 2001).  In *Chandler*, the defendant had the opportunity during the guilt phase to cross-examine each of the State's witnesses to whom the officer referred during the resentencing, and the State did not prevent him from rebutting the hearsay evidence of its witnesses.  240 F.3d at 918.  Without citing *Proffitt* or the subsequent cases affirming the right to confrontation in a capital sentencing, this court explained that if it were to determine that hearsay evidence was *per se* inadmissible in a capital sentencing, it would be announcing a new rule of law.[4]

---

[4] I am troubled by the majority's argument that because *Chandler* cites *Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1387-88 (7th Cir. 1994), which relies upon *Williams* for the proposition that hearsay is admissible at a capital sentencing, the Circuit viewed *Williams* to be good law in 2001.  While no party contests that the Supreme Court's decisions in the *Williams* cases have not been overturned, it is evident that the Supreme Court, along with our Circuit, has developed subsequent case law expanding Sixth Amendment protections in capital sentencing hearings. *See, e.g. Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004); *Proffitt v. Wainwright*, 685 F.2d 1227, 1254 (11th Cir. 1982).

*Id.* At oral argument, Muhammad argued that *Chandler* can be read narrowly to show that, in that circumstance, the court identified indicia of reliability such that the testimony need not have been excluded. Second, the court characterized defendant's failure to cross-examine witnesses during sentencing as a choice: "[t]he Sixth Amendment guarantees a defendant an adequate opportunity to cross-examine adverse witnesses. Chandler had this opportunity and capitalized on it during trial *but chose not to* during his re-sentencing phase." *Id.* (citation omitted) (emphasis added). Indeed, *Chandler* recognized that "the state [must] protect a defendant's rights by giving him/her the opportunity to rebut any hearsay information." *Id.* By contrast, in the present case, Muhammad did not have the choice of whether or not to cross-examine witnesses during his resentencing, and Detective Smith's testimony included hearsay statements that were not included at trial.[5] Accordingly, Muhammad did not have the meaningful opportunity to rebut contemplated in *Chandler.*

The majority maintains that Muhammad had the opportunity to cross-examine Detective Ojeda and the airplane pilot during the guilt phase of his trial, to cross-examine Detective Smith during the resentencing, and to present his own witnesses. Accordingly, the majority is satisfied that Muhammad had an opportunity to rebut the hearsay evidence that is consistent with the legal

---

[5] Further, it appears that the State did not even attempt to show the unavailability of the witnesses at issue in Muhammad's 1996 resentencing.

precedent.  Upon review, however, I am inclined to agree with the district court that *Proffitt* is good law which this court has repeatedly cited to acknowledge the applicability of the Confrontation Clause to capital sentencing proceedings. *Proffitt* has been understood by this court to extend Confrontation Clause protections to capital sentencing in cases decided before and after *Chandler*. Because I conclude that the Confrontation Clause of the Sixth Amendment applied to Muhammad's capital resentencing proceeding, I respectfully dissent.